370 So.2d 1351 (1979)
NATIONAL SECURITY FIRE & CASUALTY COMPANY
v.
MID-STATE HOMES, INC.
No. 51056.
Supreme Court of Mississippi.
May 16, 1979.
*1352 Watkins & Eager, Thomas M. Murphree, Jr., Jackson, for appellant.
Guy, Dowdy & Whittington, Ronald L. Whittington, McComb, for appellee.
Before ROBERTSON, SUGG and COFER, JJ.
SUGG, Justice, for the Court:
On May 15, 1973, National Security Fire & Casualty Company issued a fire insurance policy in the amount of $7,000 to Autrey Hardin which included a mortgagee clause in favor of Mid-State Homes, Inc. The policy was delivered to Mid-State and retained by it in its files. The first annual premium of $107.50 was paid but the renewal premium due May 16, 1974 was not paid. In December, 1974 the insured dwelling burned and Mid-State demanded payment of $4,030.75 from National Security, the amount of its mortgage. Payment was denied, and following a jury trial, Mid-State obtained judgment against National Security for $4,030.75 plus attorneys' fees in the amount of $1,007.68.[1]
National Security contends that the policy lapsed by its own terms because the premium due on May 16, 1974 was not paid. The resolution of this contention requires consideration of section 83-13-9 Mississippi Code Annotated (1972) which follows:
Each fire insurance policy on buildings taken out by a mortgagor or grantor in a deed of trust shall have attached or shall contain substantially the following mortgagee clause, viz:

*1353 Loss or damage, if any, under this policy, shall be payable to (here insert the name of the party), as ____ mortgagee (or trustee), as ____ interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; and in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same. The mortgagee (or trustee) shall notify this company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void. This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this company shall have the right on like notice to cancel this agreement. In case of any other insurance upon the within described property, this company shall not be liable under this policy for a greater proportion of any loss or damage sustained than the sum hereby insured bears to the whole amount of insurance on said property issued to or held by any party or parties having an insurable interest therein, whether as owner, mortgagee, or otherwise. Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all security held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of ____ claim. Nothing in the foregoing prescribed form shall be construed to in any manner modify the provisions of section 83-13-5. (Emphasis supplied).
We held in Bacot v. Phoenix Insurance Co., 96 Miss. 223, 50 So. 729 (1909) that the statute is automatically written into every fire insurance policy on buildings taken out by a mortgagor or grantor in a deed of trust. We also held in Bacot that the statute has the effect of making an independent contract in favor of the mortgagee which is not impaired by any act or neglect of the mortgagor or owner of the property.
In Barry & Brewer v. Wright, 168 Miss. 216, 150 So. 186 (1933) the statute was construed and, in a special concurring opinion, Justice Ethridge stated:
The statute is more than a mere contract; it announces a public policy, as well as provides the terms of a contract in regard to the mortgage clause, in every deed of trust or mortgage taken out on buildings in this state. The purpose of the statute is wholesome, and tends to preserve the property of the state. It removes the temptation to get insurance upon property greater than the interest of the owner of the property insured; and it also tends to prevent having insurance on the same property in separate policies, payable to separate persons, having separate interests in the property. The statute is highly favorable to the mortgagee. It makes his insurance on the mortgaged property valid, regardless of the neglect of the mortgagor or owner, or by change of ownership or foreclosure proceedings, or *1354 by occupation of the premises for purposes more hazardous than are permitted by the policy. The mortgagee is not put to the trouble or risk of seeing that the mortgagor or owner has truly stated the facts, and has kept up the premiums, or has continued as the owner of the property. As a compensation for this benefit, highly advantageous to the mortgagee, the statute has imposed on the mortgagee the duty of paying the premiums if the mortgagor shall not pay them, on a demand for such payment by the insurance company, or those who stand in its right. It also imposes upon the mortgagee, or trustee, the duty to notify the company of any change of ownership or occupancy, or increased hazard, which shall come to the knowledge of the mortgagee or trustee, where the risk is not authorized by the terms of the policy, and the mortgagee or trustee, on demand, shall pay increased premiums for such increased hazard, if any, involved in the change of ownership, or change of conditions affecting the risk. Under the statute, every person taking a mortgage on the character of property covered by the statute, takes it subject to the terms of the statute; he takes the benefit with the burdens, as a part of his right to such security, and if the policy is issued, his right or interest in the property will be protected by the statute. (168 Miss. at 231, 232, 150 So. at 189).
We approve and adopt the construction of the statute quoted above and reaffirm the principle that the statute announces a public policy applicable to every fire insurance policy issued on buildings taken out by a mortgagor or grantor in a deed of trust. We held, in Hennessey v. Helgason, 168 Miss. 834, 151 So. 724 (1934), that the statute makes both the mortgagor and the mortgagee liable to the insurance company for payment of premiums, with the obligation of the mortgagor being primary, and that of the mortgagee being in the nature of a surety or guarantor.
The statute also authorizes an insurance company to cancel a policy and the mortgage clause agreement at any time as provided by the terms of the policy, but provides that the policy shall continue in force for the benefit of the mortgagee or trustee for ten days after notice to the mortgagee or trustee of such cancellation.
The fire insurance policy involved in this case is a continuous policy subject to the payment of the premium specified and contains the following provision:
In consideration of the provisions and stipulations herein, or added hereto, and of the premium above specified, this company, for the term of one year beginning at noon of the date hereof to noon, of the following yearly date, standard time, at the location of the property insured, and continuously thereafter from year to year, for each succeeding year for which the premium is paid in advance, ...
Under the terms of the quoted provision the policy is automatically cancelled for nonpayment of each annual premium; however, the provision conflicts with the ten day notice requirement of the statute and is ineffective to a mortgagee, but is effective to a mortgagor or owner of the property.
National Security contends it sent a notice to Mid-State and the mortgagor about two weeks before May 16, 1974 that the renewal premium would be due May 16, 1974, and this notice satisfied the requirement of the statute. Assuming the notice was sent by National Security, the notice did not constitute notice to the mortgagee, Mid-State, that the policy was cancelled for nonpayment of the premium due. Mid-State was entitled, under the statute, to ten days notice of cancellation for nonpayment of premium. As a compensation for this benefit to the mortgagee, the statute has imposed on the mortgagee the duty of paying the premium if the mortgagor fails to pay the premium on a demand for such payment by the insurance company.
After the premium was not paid by the mortgagor on May 16, 1974, National Security should have demanded payment of the premium by the mortgagee, Mid-State, or if it desired to cancel the policy for nonpayment of the premium, ten days notice of such intent should have been given to Mid-State *1355 who could have paid the premium within the ten day period.
AFFIRMED.
PATTERSON, C.J., and SMITH and ROBERTSON, P. JJ., and WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.
NOTES
[1] National Security is not licensed to do business in Mississippi; therefore, attorneys' fees were properly awarded under the provisions of section 83-21-51 Mississippi Code Annotated (1972).