555 So.2d 67 (1989)
LUMBERMENS MUTUAL CASUALTY COMPANY
v.
J. Corrigan THOMAS, Deposit Savings Bank and First Guaranty Savings and Loan Association.
No. 07-CA-58947.
Supreme Court of Mississippi.
December 13, 1989.
*68 Lawrence C. Gunn, Jr., Hattiesburg, for appellant.
Frank D. Montague, Montague Pittman & Schwartz, Hattiesburg, for appellees.
Before ROY NOBLE LEE, C.J., and PRATHER and SULLIVAN, JJ.
PRATHER, Justice, for the Court:
This appeal involves a fire insurance policy containing provisions that protect a mortgagee's interest in insured property destroyed by fire. The question presented is whether the mortgagee timely gave notice to the insurer of a material change of occupancy or a material increase of hazard. The trial court found that a timely notice was given, and this Court affirms.
Lumbermens Mutual Casualty Company (Lumbermens) brought this action in the Circuit Court of Lamar County against the three appellees, (1) J. Corrigan Thomas, the insured property owner, (2) Deposit Savings Bank (Deposit Savings), the first mortgagee, and (3) First Guaranty Savings and Loan Association (First Guaranty), the second mortgagee, seeking a declaratory judgment establishing its non-liability under a fire insurance policy on Thomas' home. The trial court, sitting without a jury, entered a default judgment against Thomas for his failure to appear at trial and also ruled against First Guaranty, because it was not a named mortgagee on the policy. Neither of those parties has chosen to appeal the trial court's decision. The trial court ruled against Lumbermens, holding that, under the terms of the policy, the Company was liable to Deposit Savings for the amount of the mortgage, plus interest. Lumbermens has now perfected its appeal to this Court, asserting that the trial court erred by not holding that Deposit Savings failed to comply with the requirements of the mortgage clause, thereby terminating their right to recovery under the insurance policy.

I.
J. Corrigan Thomas, a defendant below, took out an insurance policy on his residence in Hattiesburg with the appellant Lumbermens Mutual Casualty Company. Deposit Savings held the first mortgage on Corrigan's home, and First Guaranty held a second mortgage taken out by Corrigan when he added a swimming pool behind the house. The house was underwritten as an owner-occupied residence by Lumbermens.
By September of 1985, however, Thomas had abandoned the premises and moved to Houston, Texas. During that same month, Thomas became delinquent on his payments to the second mortgagee, First Guaranty, prompting an investigation of the premises. At some point between October 8 and October 10, Virgil Britt of First Guaranty visited the premises and determined that the house was vacant.
Britt contacted Deposit Savings, the first mortgagee, and notified them that the property was vacant. Deposit Trust then contacted Clyde Burchfield, an independent contractor in the business of inspecting mortgaged properties and taking precautionary measures to protect them from vandals and arsonists. Burchfield inspected the property on October 11, taking pictures in the process. As a result of his inspection, Burchfield concluded that the property was indeed vacant, and informed Deposit Savings of this fact by a letter mailed that day. October 11, 1985 was a Friday, and the following Monday was Columbus Day, a national holiday. It is therefore unlikely that the letter could have reached Deposit Savings earlier than Tuesday, October 15. This fact is important because Lumbermens maintained at trial that Deposit Savings unnecessarily delayed in notifying them of the property's vacant status.
On October 16 or 17, Deposit Savings instructed Burchfield to secure the house by making sure the utilities were off, pumping the water out of the swimming pool, draining the water out of the pipes in the house, boarding up windows and doors, *69 and securing the garage door. Burchfield also placed a lock on the front door and, because Thomas was trying to sell the house, delivered a key to Thomas' realtor.
Thomas' insurance policy with Lumbermens contained a "standard union mortgage clause" as required by § 83-13-9, M.C.A. (Supp. 1989). By the terms of the mortgage clause, a mortgagee (here, Deposit Savings) is obligated to apprise the insurance company of "any change of ownership, or occupancy or increase of hazard which shall come to the knowledge of said mortgagee ..." If the mortgagee fails to follow through on this obligation, the insurance policy becomes null and void.
Deposit Savings notified Lumbermens of the vacancy on October 25, 1985. Unfortunately, by that time, an unknown arsonist had destroyed the Thomas residence. It has never been suggested that Deposit Savings had anything to do with setting the fire. The trial court, sitting without a jury, found that the dwelling had been destroyed on October 24. This finding was consistent with Virgil Britt's testimony to the effect that he had learned of the fire by 10:00 a.m. on October 25.
In this declaratory judgment proceeding, the trial court found in Deposit Savings' favor, holding that the two-week delay in notifying Lumbermens of the vacant status of the residence was not unreasonable. The court also held that since Lumbermens would have been required to give ten (10) days notice to Deposit Savings before they could have cancelled the policy, the cancellation could not have become effective prior to the fire loss on October 25. Lumbermens has now appealed the trial court's decision to this Court.

II.
Prudent property owners protect their investments with fire insurance policies, and, where property is encumbered by mortgages, those fire insurance policies contain clauses to protect the mortgagee's interest in event of a fire loss. Miss. Code Ann. § 83-13-9 (Supp. 1989). These provisions in fire insurance policies are generally referred to as mortgage clauses, and the provision involved in this policy is a typical standard union mortgage clause, which has been interpreted to be a separate contract of insurance between the mortgagee and the insurer. Weems v. American Security Insurance Company, 450 So.2d 431 (Miss. 1984); Peerless v. Bailey Mortgage Co., 345 F.2d 14, 16 (5th Cir.1965). In this case, the insurer's position is that because the mortgagee was under a duty to report a change in occupancy or an increase in hazard under the policy and failed to do so in a timely manner, it forfeited any claims under the policy.
Under Lumbermens' sole assignment of error, it claims that Deposit Savings waited an unreasonable length of time before notifying them of the house's vacant status, thereby terminating their right to the insurance proceeds when the house was destroyed. Lumbermens invokes the language of the "mortgage clause" of its policy to avoid liability. The mortgage clause, as it actually appears in this insurance policy, reads as follows:
12. Mortgage Clause.
If a mortgagee is named in this policy, any loss payable under Coverage A or B shall be paid to the mortgagee ... as interests appear.
If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:
a. notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;
b. pays any premium due under this policy on demand if you have neglected to pay the premium
If the policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect.
To invoke the requirement of a duty to notify the insurer, there must have been (1) a change of occupancy or an increase in hazard, and if an increase in hazard, that hazard must (2) materially increase the insurer's risk, (3) occur after the effective date of coverage, and (4) proximately cause the insurer's loss. Weems, supra, at 436. Weems also stated the burden of proving *70 noncompliance with the notice of change of occupancy or increase of hazard is upon the insurer who asserts it in these words:
The clause in question provides that the policy shall become null and void, i.e., extinguished, as it relates to the mortgagee only upon the happening of a certain event. A contract that is conditioned to become void on a specified event is one subject to a condition subsequent. The burden of proving a condition subsequent rests upon the party seeking to show that the condition has occurred and that the obligation has been voided.
450 So.2d at 435.
It should be noted that nowhere in the mortgage clause is a time requirement imposed on the mortgagee for notifying the insurance company when one of the listed circumstances presents itself. As the party responsible for the language contained in the insurance policy, Lumbermens had every opportunity to specify how much time a mortgagee had in which to notify them of a changed circumstance under the terms of the mortgage clause. Their failure to state a specific time within which the insurer must receive notice should not work to the detriment of Deposit Savings. Numerous cases from this Court have held that where a provision of an insurance policy is uncertain or ambiguous, it should be construed most strongly against the insurer. Ford v. Lamar Life Insurance Co., 513 So.2d 880, 886 (Miss. 1987); Southern Farm Bureau Casualty Insurance Co. v. Brewer, 507 So.2d 369, 372 (Miss. 1987); Aetna Casualty and Surety Co. v. Steele, 373 So.2d 797, 799 (Miss. 1979). This fact alone mitigates strongly against Lumbermens position on appeal.
It is also true that an insurance policy is a contract. Mink v. Andrew Jackson Casualty Insurance Co., 537 So.2d 431, 434 (Miss. 1988). As such, general principles of contract law are helpful in analyzing provisions of the policy. When dealing with a mortgage clause which does not specify the length of time a mortgagee has to notify an insurance company of a change of circumstances, it has been written that "the mortgagee is entitled to at least a reasonable time for giving such notice." 10A G. Couch, Couch on Insurance 2d § 42:763 at 790-91 (1982) (emphasis added). This statement is consistent with Mississippi cases which have addressed the issue of the interpretation of insurance policies. See Mississippi Farm Bureau Mutual Insurance Co. v. Todd, 492 So.2d 919, 930 (Miss. 1986) (certain key provisions of insurance policy may be implied from what is "ordinary" and "reasonable" under the circumstances); State Farm Mutual Automobile Insurance Co. v. Scitzs, 394 So.2d 1371, 1372 (Miss. 1981) ("insurance contracts must be given a reasonable and sensible interpretation..."). Under the circumstances, the question then becomes "Was the time period of approximately two (2) weeks reasonable?" In the opinion of the trial court and of this Court, the answer is "yes."
A review of the record indicates that First Guaranty, the second mortgagee, first became aware of the dwelling's vacant status sometime between October 8 and October 10. Once Deposit Trust was contacted by First Guaranty, they dispatched Burchfield, the inspector, to the premises to investigate the situation. His letter confirming First Guaranty's report was mailed to Deposit Savings on October 11, a Friday. The following Monday, October 14, was Columbus Day, a national holiday. This means that mail was not being delivered that day. By October 16 or 17, Deposit Savings had begun taking steps to insure that the house was as secure as reasonably possible. Within a week of these steps being taken, Deposit Savings had informed Lumbermens that the house was vacant. This cannot be considered an unreasonable delay.
The unfortunate fact here is that the house had been destroyed just prior to Lumbermens' receipt of the information. However, this fact does not serve to sever Deposit Savings' right to the insurance proceeds. If Burchfield had inspected the house at 12 noon on October 11, then returned to the house two (2) hours later to discover that it had been ruined by an arson fire, the intervening fact that the *71 house had been destroyed would not serve to negate the "reasonableness" of the timing of his report to Deposit Savings, or the "reasonableness" of their notification to Lumbermens. Despite the fact that the house was destroyed before Lumbermens received word that the house had been abandoned, this does not affect the "reasonable" notification Deposit Savings gave Lumbermens under the terms of the mortgage clause.
Additionally, even if Lumbermens had received notice of the vacancy prior to the fire, a clause in the insurance policy specifically stated that once a decision to cancel the policy was made by the insurance company, the mortgagee would receive ten (10) days notice prior to the cancellation taking effect. This fact mitigates against the fourth requirement of Weems that the increased hazard be proximately caused by the failure to notify. See Weems, supra at 436.
Finally, the trial court specifically found that the two-week time period was not unreasonable. Where a cause is tried by a trial judge sitting without a jury, his finding is entitled to the same deference as a jury verdict, which is to say that it should not be reversed unless manifestly in error. Wicks v. Mississippi Valley State Univ., 536 So.2d 20, 24 (Miss. 1988); Rives v. Peterson, 493 So.2d 316, 317 (Miss. 1986). After a careful study of the facts and the record in this case, this Court cannot say that the trial court manifestly erred by deciding the case as it did. There is no merit to this assignment of error.
For the foregoing reasons, it is this Court's opinion that the decision of the trial court should be affirmed in all respects.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.
PITTMAN, J., not participating.